IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RODNEY H. MARSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV353 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rodney H. Marsh, brought this action to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court has before it the certified administrative record and cross-motions for judgment. For the reasons set forth below, the Court recommends that Defendant's motion (Docket Entry 12) be denied and Plaintiff's motion (Docket Entry 9) be granted, and that this matter be remanded for further administrative action as set forth herein.

## I. PROCEDURAL HISTORY

In February 2010, Plaintiff filed an application for DIB and SSI alleging a disability onset date of July 13, 2006. (Tr. 330-33; 334-37.)[1] Plaintiff's claims were denied initially and

---

[1] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 7.)

upon reconsideration. (Tr. 215-19; 222-29.) Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 231-32.) A hearing was held on April 25, 2012. (Tr. 86-116.) ALJ Emanuel C. Edwards issued an unfavorable decision on June 1, 2012. (Tr. 197-207.) The Appeals Council granted Plaintiff's request for review of the ALJ's decision, and thereafter remanded the matter for a new hearing to address Plaintiff's mental limitations. (Tr. 212-14.) On September 17, 2013, a second hearing (Tr. 62-81) was held before ALJ Joseph Pachnowski who also issued an unfavorable decision. (Tr. 43-56.) This decision became the final administrative decision after the Appeals Council declined review. (Tr. 1-13.) Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[It] 'consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The denial of benefits will be reversed only if no reasonable mind could accept the record as

adequate to support the determination. *Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Thus, "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]'" *Id.* (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Id.* "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." *Id.* (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ("RFC") to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The law concerning these five steps is well-established. *See, e.g.,*

*Mastro v. Apfel*, 270 F.3d 171, 177-180 (4th Cir. 2001); *Hall*, 658 F.2d at 264-65.

## III. THE ALJ's DECISION

In his January 24, 2013 decision, the ALJ found that Plaintiff was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (Tr. 56.) In making this disability determination, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date of July 13, 2006. (Tr. 46.) At step two, the ALJ found that Plaintiff had the following severe impairments: chronic hip, arm, knee, and ankle pain, status post back injury; bilateral foot and hand numbness; migraine headaches; diabetes mellitus; lumbar degenerative disc disease; hypertension; arthritis; chronic obstructive pulmonary disease; anxiety disorder; affective mood disorder; and substance abuse disorder. (*Id.*) At step three, the ALJ found that Plaintiff had no impairment or combination of impairments listed in, or medically equal to, one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 48.) The ALJ then determined that Plaintiff retained the RFC to perform light work with the following limitations:

> [D]ue to back pain and reported numbness in his extremities, [Plaintiff] can only occasionally stoop and crouch and frequently but not continuously handle. He must also avoid concentrated exposure to dust, gases, fumes, and smoke. Due to symptoms of anxiety, [Plaintiff] is limited to performing simple routine repetitive tasks.

(Tr. 50.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 54.) At step five, the ALJ determined that there were jobs which Plaintiff could perform consistent with his RFC, age, education, and work experience. (Tr. 55.)

## IV. DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ erred in his consideration of medical opinion evidence. (Docket Entry 10 at 5-8.) Second, Plaintiff argues that the ALJ erred in inadequately accounting for Plaintiff's moderate limitations in concentration, persistence, or pace in Plaintiff's RFC. (*Id.* at 8-11.) The latter is discussed below, which the undersigned concludes is grounds for remand.

### A. Concentration, Persistence, or Pace/Application of the Grids

Plaintiff argues that the ALJ's findings that Plaintiff be limited to performing simple, routine, repetitive tasks inadequately accounts for Plaintiff's moderate limitations in concentration, persistence, or pace. (*Id.*) Plaintiff relies upon *Mascio v. Colvin*, where the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d 632, 638 (4th Cir. 2015) (internal quotations and citations omitted). The Court further reasoned that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The Fourth Circuit also added that

> [p]erhaps the ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [a claimant's] residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [a claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

*Id.* (internal citation omitted).

5

In the present case, the ALJ found that "[w]ith regard to concentration, persistence, or pace, the claimant has moderate difficulties. The claimant indicated . . . that he has difficulty remembering the words to songs . . . and that he sometimes forgets to take his medications." (Tr. 49.) The ALJ further stated that Plaintiff's sister indicated that Plaintiff "follows written and spoken instructions fine." (*Id.*) "Giving [Plaintiff] the benefit of the doubt," the ALJ found that Plaintiff was "moderately limited in this area of functioning." (*Id.*) The Commissioner argues that *Mascio* is distinguishable here as the ALJ specifically and "amply accounted for Plaintiff's moderate limitation in concentration, persistence, or pace in the [RFC] by restricting him to simple, routine, repetitive tasks, as found by the state agency psychologists." (Docket Entry 13 at 7 (citing Tr. 50)). The two state agency psychologists, whose opinions were given significant weight by the ALJ, opined that Plaintiff was "capable of concentrating and persisting with simple routine repetitive tasks." (*See* Tr. 136, 171; *see also* Tr. 148.)

The undersigned finds it unnecessary to conduct a review of the ALJ's decision based upon *Mascio* because as Plaintiff argues, the ALJ provided no explanation of why he did not rely upon the testimony of the vocational expert after finding that Plaintiff had both exertional and nonexertional limitations.[2] (Docket Entry 10 at 10.) The holding in *Mascio* regarding concentration, persistence, or pace was determined in the context of "hypotheticals" presented to the vocational expert as to a claimant's ability to work. Here, the ALJ relied upon the Grids at Step Five and did not adopt the vocational expert's findings. Thus, the real underlining

---

[2] In its cross-motion for judgment, the Commissioner did not address this portion of Plaintiff's *Mascio* argument.

6

issue here is whether the ALJ properly applied the grids rather than relying upon the testimony of the vocational expert. The undersigned recommends remand on this issue as the ALJ's Step Five analysis does not permit meaningful judicial review.

At Step Five, if a claimant cannot return to his past relevant work, the burden shifts to the Commissioner to show that other jobs exist in significant numbers that Plaintiff could perform. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). If a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy his burden of proof. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). However, "[t]he Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments." *Aistrop v. Barnhart*, 36 Fed. Appx. 145, 146 (4th Cir. 2002). To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the Grids may not be relied upon to demonstrate the availability of alternate work activities. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). Rather, when a claimant suffers from both exertional and nonexertional limitations, the Grids are not conclusive but may only serve as a guide. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984)). A nonexertional limitation is a "limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not . . . [s]uch limitations are present at all times in a claimant's life, whether during exertion or rest." *Woody v. Barnhart*, 326 F. Supp. 2d 744, 752 (W.D. Va. 2004) (quoting *Gory*, 712 F.2d at 930)). Typically, they are conditions such as mental disorders (including depression), environmental intolerances, substance addictions, or sensory

impediments. *Id.* (citing 20 C.F.R. § 1569a, SSR 96–8p; and *Walker*, 889 F.2d at 48-49). Furthermore "[a] non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category." *Aistrop*, 36 Fed. Appx. at 147 (citing *Gory*, 712 F.2d at 930).

However, "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the [G]rids." *Walker*, 889 F.2d at 49 (citing *Grant*, 699 F.2d at 189). The proper inquiry is whether the nonexertional condition affects an individual's RFC to perform work of which he is exertionally capable. *Id.* If so, the Commissioner "must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy." *Grant*, 699 F.2d at 192 (citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). To directly apply the Grids to a nonexertional impairment, an ALJ must first find as fact that the impairment does not significantly affect the occupational base of work at the relevant exertional level.[3]

To directly apply the Grids here, the ALJ was required to determine that Plaintiff's nonexertional limitations did not significantly reduce his ability to perform a full range of work at the light exertional level. Here, the ALJ simply concluded that "additional limitations have little or no effect on the occupational base of unskilled light work." (Tr. 55.) However,

---

[3] *See, e.g., Stratton v. U.S. Dep't of Health & Human Servs.*, No. 88–1614, 1989 WL 100814, at *3 (4th Cir. May 8, 1989) (unpublished opinion) (concluding "it is for the ALJ to determine as a question of fact whether the [nonexertional limitation] complain[ed] of affects [the claimant's] residual capacity to engage in certain work activities") (citation and quotations omitted); *Smith*, 719 F.2d at 725 ("Whether a given nonexertional condition affects a particular claimant's residual capacity to engage in certain job activities is a question of fact."); *Phillips v. Astrue*, No. 1:10CV289, 2011 WL 5039779, *3 (M.D.N.C. Oct. 24, 2011) (unpublished) (concluding that "the ALJ may rely exclusively on the Grids where the ALJ has properly decided, as an issue of fact, that Plaintiff's non-exertional condition does not significantly affect" her ability to work) (citation omitted).

without further analysis here, the Court is unable to determine whether substantial evidence exists to support the ALJ's findings at Step Five. *Boler v. Colvin*, No. 1:10-CV-451, 2013 WL 5423647, at *4 (M.D.N.C. Sept. 26, 2013) (unpublished) ("Regardless of whether an ALJ relies on the grids or VE testimony, his step five analysis must capture . . . the concrete consequences of a claimant's deficiencies as supported by the substantial evidence . . . [and] build an accurate and logical bridge from the evidence to [his] conclusions . . . .") (citation and quotations omitted); *see also Clowers v. Astrue*, No. 3:12-CV-00229-FDW, 2013 WL 2351361, at *6 (W.D.N.C. May 23, 2013) (unpublished) (the ALJ specifically acknowledged in Plaintiff's RFC that his nonexertional limitation affected his work capacity, but the ALJ "failed to offer any explanation of how he had factored Plaintiff's [nonexertional] limitation into [the ALJ's] Step 5 assessment that there were jobs in significant numbers that Plaintiff could perform.").

As previously explained, the burden of proof is with the Commissioner at the fifth step to make findings and support them with substantial evidence; thus, the undersigned believes that the appropriate course here is to remand this case back to the ALJ for adequate explanation as to why Plaintiff's nonexertional limitations do not significantly affect the occupational base of work at the relevant exertional level. *Boler*, 2013 WL 5423647, at *4; *see also Cobbs v. Colvin*, No. 1:15-1972-JMC-SVH, 2016 WL 3085906, at *12 (D.S.C. Apr. 1, 2016), *report and recommendation adopted*, No. 1:15-CV-01972-JMC, 2016 WL 3059854 (D.S.C. May 31, 2016) (unpublished) ("[T]he ALJ cited insufficient evidence to support his conclusion that Plaintiff's nonexertional limitations did not significantly reduce the occupational base."). The Court declines consideration of the additional issues raise by Plaintiff at this time. *Hancock v.*

*Barnhart*, 206 F. Supp. 2d 757, 763–764 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 9) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be **DENIED**.

											Joe L. Webster
									United States Magistrate Judge

July 26, 2016
Durham, North Carolina

10

Case 1:15-cv-00353-TDS-JLW   Document 14   Filed 07/26/16   Page 10 of 10